147 Pa. Commonwealth Ct. 426 (1992)
608 A.2d 576
CENTRAL DAUPHIN SCHOOL DISTRICT; Hatboro-Horsham School District; Steelton-Highspire School District and the Pennsylvania School Boards Association, Petitioners,
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION and Donald M. Carroll, Jr., Secretary of Education of the Commonwealth of Pennsylvania, Respondents.
Commonwealth Court of Pennsylvania.
Argued April 6, 1992.
Decided April 23, 1992.
*428 Stuart L. Knade, for petitioners.
Gregory R. Neuhauser, for respondents.
Before PALLADINO and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.
PALLADINO, Judge.
Now before the commonwealth court for disposition are a motion for post-trial relief filed by Petitioners Central Dauphin School District, Hatboro-Horsham School District, Steelton-Highspire School District and The Pennsylvania School Board Association (collectively, School Districts) and a cross-motion for post-trial relief filed by Respondents Department of Education and Secretary of Education Donald M. Carroll, Jr. (collectively, Secretary). Both motions concern commonwealth court Judge Madaline Palladino's February 7, 1992 adjudication and decree nisi which ruled *429 upon the School Districts' petition for review in the nature of a request for an injunction and for a declaratory judgment regarding the interpretation of Act 25 of 1991 (Act 25)[1] which added subsections (g) and (h) to section 687 of the Public School Code of 1949 (Public School Code), 24 P.S. § 6-687(g)-(h). See Pa.R.C.P. Nos. 227.1, 1517, and 1520 (rules governing post-trial motions, decrees nisi, and final decrees). For the following reasons, we deny the School Districts' and the Secretary's post-trial motions and affirm the decree nisi pursuant to Pa.R.C.P. No. 227.1(a)(4).[2]

A. Errors Claimed by Parties
In their motion for post-trial relief, the School Districts raise the following grounds for modification of the February 7 adjudication and decree nisi:
1. The language of Act 25 cannot be construed to include, within the definition of "additional state funds" to be used for local tax abatement, the low expenditure supplements newly provided in sections 2502.17 and 2502.18 of the School Code.
2. The Secretary's August 16, 1991, Budget Reopening Instructions, because of their content and substantive effect, constituted regulations subject to statutory requirements for formal promulgation, regardless of whether Act 25 itself required or authorized the issuance of regulations.
3. The language of Act 25 cannot be construed to require school districts to use all "additional state revenues" for tax abatement, or to prevent school districts from using a portion of "additional state revenues" for educational program needs.

*430 4. Paragraphs 8 and 9 of the Stipulation of Facts were relevant to the unreasonableness of the results produced by the Secretary's construction of Act 25, and should have been considered over the Secretary's objection thereto.
School Districts' Brief in Support of Motion for Post-Trial Relief at i.
In his motion for post-trial relief, the Secretary raises the following grounds for modification of the February 7 adjudication and decree nisi:
1. Act 25 requires school districts to consider both additional appropriations and savings from revised retirement contribution rates as the "additional funds" subject to tax abatement following budget reopening.
2. Act 25 contemplates prompt tax abatement and implementation of school districts' abatement plans since the Act requires abatement within sixty days of budget reopening, requires notice to taxpayers of the reduction in taxes from the abatement plans, and expressly prohibits deposit of any funds subject to abatement into school district reserve accounts.
Secretary's Brief in Support of Motion for Post-Trial Relief at i.
Prior to the issuance of the February 7 adjudication and decree nisi, a definitive interpretation of Act 25 had not been rendered by a Pennsylvania court.[3] Through their post-trial motions, the School Districts and the Secretary assign as error those interpretations of Act 25 which appear in the February 7 adjudication and decree nisi and which conflict with the School Districts' and the Secretary's respective interpretations of Act 25. Having examined the parties' post-trial motions, we conclude that neither the School Districts' nor the Secretary's post-trial motion establishes *431 that the February 7 adjudication and decree nisi contained an erroneous interpretation of Act 25. We shall briefly address seriatim the grounds upon which the parties seek post-trial relief.

I. Low Expenditure Supplements
Citing the language of subsection 687(g)(1), the School Districts contend that the February 7 adjudication and decree nisi improperly hold that the low expenditure supplements of subsections 2502.17 and 2502.18 are subject to the tax relief measures of Act 25.
Subsection 687(g)(1) states that school districts must reopen and adjust their 1991-1992 fiscal year budgets to reflect enumerated "increased allocations" supplied by the General Assembly through the General Appropriation Act of 1991. Specifically, subsection 687(g)(1) asserts that "increased allocations" have been provided for certain school district subsidies including payments on account of instruction and small district assistance payments. Subsection 687(g)(1) does not list the two low expenditure supplements of subsections 2502.17 and 2502.18 as being included in the school district subsidies for which the General Appropriation Act of 1991 provided "increased allocations."
Section 2501(18) of the Public School Code, as amended by section 6 of Act 25, defines equalized subsidy for basic education (ESBE) as having five components: payments on account of instruction under section 2502; economic supplement under section 2502.11; assistance to small districts under section 2502.13; low expenditure, low wealth supplement under section 2502.17, and low expenditure poverty supplement under section 2502.18. Because subsection 687(g)(1) refers to "increased allocations" for fiscal year 1991-1992 as including two of the five ESBE components (i.e., payments on account of instruction and small district assistance payments), the School Districts argue that the General Assembly did not intend to make any other ESBE components (i.e., the two low expenditure supplements) subject to Act 25's tax relief measures.
*432 Section 687 bears the heading: "Annual Budget; Additional or Increased Appropriations; Transfer of Funds." (Emphasis added.) Subsection 687(g)(1) refers explicitly to "increased allocations" whereas subsections 687(g)(2)-(4) refer explicitly to "additional State revenues." We conclude that the February 7 adjudication and decree nisi correctly held that the expressions "increased allocations" and "additional State revenues" are not interchangeable and that the low expenditure supplements of subsections 2502.17 and 2502.18 comprise "additional State revenues" subject to Act 25's tax relief measures.
Subsection 687(g)(1) directs school districts to reopen and adjust their fiscal year 1991-1992 budgets and explains why the reopening and adjustment must occur. Specifically, subsection 687(g)(1) declares that school districts must reopen and adjust their 1991-1992 budgets because the General Assembly has given school districts "increased allocations" through the General Appropriation Act of 1991. Subsection 687(g)(1) lists several categories of school district subsidies (e.g., payments for instruction, small district assistance payments, payments for transportation of non-public school pupils) which existed prior to the General Appropriation Act of 1991 and which received greater funding under the General Appropriation Act of 1991.
The low expenditure supplements of subsections 2502.17 and 2502.18 were added to the Public School Code by Act 25 and therefore were not a form of subsidy which predated the General Appropriation Act of 1991. Inasmuch as the low expenditures supplements did not exist prior to the General Appropriation Act of 1991, the General Appropriation Act of 1991 created, rather than increased, funding for these supplements. It is for this reason that the low expenditure supplements of subsection 2502.17 and 2502.18 were not included in subsection 687(g)(1)'s reference to "increased allocations."
However, the failure of the low expenditure supplements to qualify as "increased allocations" under subsection 687(g)(1) is not determinative of whether the supplements *433 are subject to Act 25's tax relief measures. Subsections 687(g)(2), 687(g)(3), and 687(g)(4) detail what actions school districts must take to adjust their fiscal year 1991-1992 budgets after reopening them. After reopening their 1991-1992 budgets, school districts must, in the absence of a tax rebate waiver from the Secretary, afford tax relief by refunding to local taxpayers the amount by which the "additional State revenues" generated by the General Appropriation Act of 1991 exceed the revenue figures appearing in the school districts' originally adopted 1991-1992 budgets. Subsections 687(g)(2), 687(g)(3), and 687(g)(4) require school districts to engage in tax alleviation measures based upon the districts' receipt of "additional State revenues."
The low expenditure supplements of subsections 2502.17 and 2502.18 appear for the first time in Act 25's amendment to the Public School Code, and the General Appropriation Act of 1991 creates funding for the two supplements. Therefore, subsections 2502.17 and 2502.18 constitute "additional State revenues" produced by the General Appropriation Act of 1991 and subject to Act 25's tax refund measures.
Consequently, we conclude that the February 7 adjudication and decree nisi correctly included the low expenditure supplements of subsections 2502.17 and 2502.18 in the amount of moneys subject to Act 25's tax relief plan.

II. Budget Reopening Instructions
In their post-trial motion, the School Districts claim that the February 7 adjudication and decree nisi erroneously hold that the Secretary's August 16 budget reopening instructions are not regulations. The School Districts reassert their contention that the August 16 budget reopening instructions comprise, by virtue of their alleged substantive content, regulations which should be stricken for not having been promulgated in conformity with the notice and hearing *434 requirements of the Regulatory Review Act,[4] the Commonwealth Attorneys Act,[5] and what is commonly called the Commonwealth Documents Law.[6] The School Districts argue that the budget reopening instructions are regulations either because of the actions which they direct school districts to take or because of the penalties which they threaten for failure to take the actions stated in the instructions.
A regulation is a governmental agency's exercise of delegated legislative power to create a mandatory standard of behavior. Pennsylvania Human Relations Commission v. Uniontown Area School District, 455 Pa. 52, 313 A.2d 156 (1973). A regulation is binding on a reviewing court if it conforms to the grant of delegated power, is issued in accordance with proper procedures, and is reasonable. Id. In contrast, a statement of policy[7] is a governmental agency's statutory interpretation which a court may accept or reject depending upon how accurately the agency's interpretation reflects the meaning of the statute. Id.; Pennsylvania Human Relations Commission v. Norristown Area School District, 20 Pa.Commonwealth Ct. 555, 342 A.2d 464 (1975), aff'd, 473 Pa. 334, 374 A.2d 671 (1977).
As emphasized by the Supreme Court of Pennsylvania in Pennsylvania Human Relations Commission v. Norristown Area School District, 473 Pa. 334, 374 A.2d 671 (1977),
[t]he critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in *435 subsequent administrative proceedings. . . . A properly adopted substantive rule establishes a standard of conduct which has the force of law. . . . The underlying policy embodied in the rule is not generally subject to challenge before the agency.
A general statement of policy, on the other hand, does not establish a `binding norm'. . . . A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued.
Id., 473 Pa. at 350, 374 A.2d at 679 (quoting Pacific Gas and Electric Co. v. Federal Power Commission, 506 F.2d 33, 38 (D.C.Cir.1974)).
In Department of Environmental Resources v. Rushton Mining Co., 139 Pa.Commonwealth Ct. 648, 591 A.2d 1168 (1991), petition for allowance of appeal denied, 529 Pa. 626, 600 A.2d 541 (1991), the commonwealth court elaborated on the distinction between a regulation and a statement of policy by explaining that a
`[b]inding norm' means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation. . . . [I]n determining whether an agency action is a regulation or a statement of policy, one must look to the extent to which the challenged pronouncement leaves the agency free to exercise discretion to follow or not follow the announced policy in an individual case.
Id., 139 Pa.Commonwealth Ct. at 658, 591 A.2d at 1173.
The Pennsylvania supreme court's analysis in Norristown Area School District is particularly helpful in ascertaining whether the Secretary's August 16 budget reopening instructions are regulations or merely a statement of policy. In Norristown Area School District, the supreme court was asked to determine whether the Pennsylvania Human Relations Commission's document entitled "Recommended Elements of a School Desegregation Plan" (document) was an invalidly promulgated regulation. After determining *436 that the Norristown Area School District had violated section 5(i)(1) of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 955(i)(1) (Supp.1976), the Pennsylvania Human Relations Commission (Commission) ordered Norristown Area School District to develop and submit a desegregation plan. The Commission determined that Norristown Area School District was a segregated school based upon the definition of a segregated school contained in the Commission's document. The supreme court reasoned that the document was a statement of policy because it "merely pose[d] questions concerning the plan for integration as means of testing the plan's chances of proving acceptable to the Commission." Id., 473 Pa. at 348, 374 A.2d at 678 (quoting Pennsylvania Human Relations Commission v. Norristown Area School District, 20 Pa.Commonwealth Ct. 555, 560, 342 A.2d 464, 467 (1975)). By preparing the document, the Pennsylvania Human Relations Commission had "not departed from its case-by-case approach to racial imbalance in schools, but ha[d] merely formulated general policy statements and made recommendations to aid school districts in developing plans which the Commission will find acceptable." Id., 473 Pa. at 347, 374 A.2d at 678.
In the present case, subsection 687(g)(6) directs the Secretary to "establish administrative procedures necessary to audit school district compliance" with Act 25's tax relief provisions and to report the Secretary's findings to the Education Committees of the Senate and the House of Representatives. The August 16 budget reopening instructions constitute the Secretary's response to the legislative directive of subsection 687(g)(6).
Like the Commission's document in Norristown Area School District, the Secretary's August 16 budget reopening instructions provide school districts with guidance in ascertaining whether they are conforming to the legislative intent expressed in a statute (here Act 25). The instructions present a series of questions concerning a school district's budget reopening and adjustment as a means of *437 allowing a school district to gauge whether its revised budget comports with Act 25's tax relief requirements. The budget reopening instructions request that school districts present their budget information to the Secretary in a fashion that will facilitate the Secretary's understanding of the information and ability to report accurately to the Senate and House Education Committees whether a school district has complied with Act 25's strictures.
As in Norristown Area School District, the evaluation of school district compliance will proceed on a case-by-case basis. Each school district will have a budget geared to its particular needs. Each school district will have available to it different amounts of funding provided by the General Appropriation Act of 1991 and by local taxes. Some school districts will qualify for state subsidies not available to other districts. Some school districts may request a tax rebate waiver from the Secretary.
The manner in which school districts must adjust their budgets is dictated by Act 25 and not by the Secretary's budget reopening instructions. If the Secretary's August 16 budget reopening instructions address any substantive standards of conduct for school districts in reopening and adjusting their budgets, the instructions are not creating and imposing such standards upon school districts but are simply reflecting the Secretary's interpretations of Act 25's strictures and obligations. An agency's "interpretations of general applicability" are not regulations but are merely statements of policy. Fair Winds Manor v. Department of Public Welfare, 517 Pa. 106, 114, 535 A.2d 42, 46 (1987) (footnote deleted).
Accordingly, we conclude that the February 7 adjudication and decree nisi correctly hold that the Secretary's August 16 budget reopening instructions are not regulations by virtue of the actions which they solicit from school districts.
The School Districts also argue that, because the budget reopening instructions enumerate penalties which school *438 districts may incur for failure to submit the information requested in the instructions, the instructions provide binding norms of conduct and are regulations. This argument misrepresents the facts.
The Secretary's August 16 budget reopening instructions were clarified by a letter of August 26, 1991 which the Secretary sent to all Pennsylvania school districts "[i]n an attempt to provide consistent and timely guidance to all districts" concerning the requirements of Act 25. In his August 26 letter, the Secretary stated that school districts could incur penalties for noncompliance with Act 25. Specifically, the August 26 letter contained the following information regarding possible penalties:
Question: Are there penalties for failure to comply with Act 25?
Answer: Failure to comply could result in withholding of state subsidies. In addition, the Department [of Education] or any taxpayer could initiate legal action forcing a school district to comply. Also, those commissioned by the Commonwealth could be subject to penalties for failure to carry out their duties. At a minimum, non-complying districts are subject to an audit citation.
Secretary's August 26, 1991 Letter at 2.
Contrary to the intimation in the School Districts' argument, the penalties listed in the August 26 letter derive from the Public School Code, as amended by Act 25, and not from the Secretary's budget reopening instructions. E.g., 24 P.S. § 25-2552 (state appropriations may be withheld from a school district until the district supplies all reports required by law). The penalty list in the Secretary's August 26 letter is merely a restatement of existing mechanisms for enforcing the Public School Code and is not the genesis of a binding norm, i.e., regulation.
The School Districts observe that the August 26 letter mentions the potential for an audit citation. The School Districts have failed to explain the significance of this observation. We are unable to discern the basis for any argument based on this observation and deem any such *439 argument waived. Neither the School Districts' nor the Secretary's post-trial motions and supporting briefs indicate the definition or effect of an audit citation. Our research has not disclosed any cases involving audit citations. However, we note that, even prior to Act 25, certain school district records have been subject to agency audits under the Public School Code. E.g., 24 P.S. § 25-2553.
Consequently, we conclude that the February 7 adjudication and decree nisi correctly hold that the Secretary's August 16 budget reopening instructions were not improperly promulgated regulations.

III. Additional State Revenues
Arguing that the commonwealth court should accept their interpretation of Act 25, the School Districts maintain that the February 7 adjudication and decree nisi misinterpret the phrase "additional State revenues" which appears in subsections 687(g)(2), 687(g)(3), and 687(g)(4). The School Districts' definition of the statutory phrase "additional State revenues" was thoroughly analyzed and rejected in the adjudication and decree nisi. We discern no error in the interpretation of the phrase "additional State revenues" which was reached in the adjudication and decree nisi.

IV. Stipulation Paragraphs 8 and 9
The School Districts assert that the February 7 adjudication and decree nisi erroneously sustained the Secretary's objections to paragraphs 8 and 9 of the parties' stipulation of facts. The adjudication and decree nisi held that the facts alleged in paragraphs 8 and 9 were not germane to a determination of the proper statutory interpretation to be accorded Act 25.
The School Districts argue that the facts in paragraphs 8 and 9 are relevant to an interpretation of Act 25 "because they clearly establish the inconsistent, uncertain and haphazard nature of the information upon which school districts based their original estimates of subsidy revenues, estimates which under Act 25 are the ruler against which the amount of `additional state revenues' is to be measured." *440 School Districts' Brief at 25. Nevertheless, the School Districts admit that Act 25 requires them to adjust their 1991-1992 budgets to reflect the excess of the "additional State revenues" provided by the General Appropriation Act of 1991 over the revenue figures utilized in their originally adopted budgets. The School Districts merely complain because the General Assembly chose to use school districts' original budgets as the benchmark for Act 25's tax relief measures. Thus, the School Districts' disagreement is with the legislative formulation for tax relief and not with the interpretation of that formulation provided in either the Secretary's August 16 budget reopening instructions or the February 7 adjudication and decree nisi.
As stated previously by this court, the School Districts and the Secretary are not involved in a factual dispute. Central Dauphin School District. The parties' dispute concerns solely the resolution of a question of law, namely, the proper interpretation of the Public School Code amendment known as Act 25. See, e.g., February 7, 1992 Adjudication and Decree Nisi; Central Dauphin School District.
Consequently, even if the facts averred in paragraphs 8 and 9 of the stipulation were considered, a different judicial interpretation of Act 25 would not result. The interpretation of Act 25 reached in the adjudication and decree nisi was compelled by the wording of Act 25. The language of Act 25 cannot be disregarded in order to achieve the result sought by the School Districts. We conclude that the February 7 adjudication and decree nisi properly sustained the Secretary's objections to paragraphs 8 and 9 of the stipulation on the grounds that said paragraphs were irrelevant to the disposition of the School Districts' petition for a declaratory judgment.

V. Retirement Contribution Savings
In asserting that the February 7 adjudication and decree nisi improperly hold local employer retirement contribution savings exempt from the tax relief measures of Act 25, the Secretary simply repeats the interpretation of the *441 phrase "additional State revenues" which he has advanced since the inception of the parties' dispute.
As explained in the February 7 adjudication and decree nisi, the Secretary's reading of Act 25 ignores the language of subsection 687(g)(2) which clearly distinguishes "additional State revenues" from local employer retirement contribution savings. Furthermore, as stated in the adjudication and decree nisi, the Secretary's construction of Act 25 disregards the statutory mandates of subsections 687(g)(2), 687(g)(3), 687(g)(4), and 687(g)(5) which unequivocally direct only "additional State revenues" to be the basis for Act 25's tax relief measures. Therefore, we conclude that the February 7 adjudication and decree nisi correctly held that local employer retirement contribution savings are not "additional State revenues" subject to Act 25's tax rebate plan.

VI. Prompt Tax Abatement
The Secretary claims that the February 7 adjudication and decree nisi erroneously failed to overrule the Secretary's objection to paragraph 15 of the parties' stipulation of facts which averred that school districts receive state subsidies in periodic installments over the course of the fiscal year.
Even if the Secretary's objection to paragraph 15 of the stipulation were sustained, a different judicial interpretation of the deadline for effectuating tax relief measures under Act 25 would not result. The Public School Code provides for installment payments of subsidies to school districts. 24 P.S. § 25-2517. The adjudication and decree nisi's interpretation of the deadline for implementing Act 25's tax rebate provision is consistent with the legislative intent expressed in the amendment to the Public School Code known as Act 25 and with the payment provisions in the remainder of the Public School Code.
As stated in the adjudication and decree nisi, Act 25 does not contain a tax rebate deadline. Subsection 687(g)(2) states that school districts must "abate" local taxes within sixty days of the reopening of their budgets. Based upon *442 principles of statutory interpretation, the adjudication and decree nisi state that subsection 687(g)(2) directs a school district to formulate its tax relief plan within sixty days after the reopening of its budget. Subsection 687(g)(3) explains what triggers the necessity for a school district to rebate tax moneys to local taxpayers. However, neither subsection 687(g)(3) nor any other provision of Act 25 enunciates a deadline by which a school district must effectuate a refund of tax moneys to local taxpayers.
The lack of statutory language expressing a tax rebate deadline is tacitly admitted by the Secretary. In his brief supporting his post-trial motion, the Secretary concedes that the sixty-day deadline of subsection 687(g)(2) cannot apply to tax rebates "because school districts receive payments from taxpayers at various times, thus making it inappropriate to rebate (refund) taxes within sixty days if such taxes had not been paid." Secretary's Brief at 21 n. 6. In the absence of an explicit statutory tax refund deadline, the Secretary argues that the General Assembly intends a prompt rebate to taxpayers.
We agree that a prompt rebate is intended by the General Assembly. However, there is no statutory language to declare what constitutes a prompt rebate. The adjudication and decree nisi directed school districts to refund moneys to taxpayers as "additional State revenues" are received by the school districts pursuant to the General Appropriation Act of 1991, and we discern no error in this directive. The directive appears consistent with the legislative intent underlying Act 25 (an amendment to the Public School Code) and with the existing installment payment provisions of the Public School Code. Therefore, a modification of the adjudication and decree nisi is not warranted.

B. Correction of Superficial Errors
For the sake of clarity, we correct the following inadvertent cosmetic errors in the February 7, 1992 adjudication.
The third to the last sentence of footnote 4 incorrectly refers to the heading of subsection III.A. of the adjudication *443 as being "Validity of Audit Procedures" whereas the heading of subsection III.A. of the adjudication is actually "Validity of Budget Reopening Instructions."
The first line in the first full paragraph on page 8 has an unnecessary apostrophe after the word Districts (Districts'). The word should simply be Districts.

C. Conclusion
Because we conclude that the School Districts' and the Secretary's cross-motions for post-trial relief have not established any errors in the February 7, 1992 adjudication and decree nisi, we deny the cross-motions and affirm, with the correction of the two above-referenced cosmetic errors, the February 7, 1992 adjudication and decree nisi. See Pa.R.C.P. No. 227.1(a)(4).

ORDER
AND NOW, April 23, 1992, the Petitioners' and Respondents' cross-motions for post-trial relief in the above-captioned case are hereby denied; the February 7, 1992 adjudication and decree nisi in the above-captioned case are hereby affirmed pursuant to Pa.R.C.P. No. 227.1(a)(4), and the decree is hereby made final pursuant to Pa.R.C.P. No. 1520.
NOTES
[1] Act of August 5, 1991, P.L. 219, Act No. 91-25, amending various sections of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§ 1-101  27-2702.
[2] A complete procedural history of the parties' litigation before the commonwealth court can be found by looking at both the February 7, 1992 adjudication and decree nisi and the commonwealth court's earlier decision in Central Dauphin School District v. Department of Education, 143 Pa.Commonwealth Ct. 374, 598 A.2d 1364 (1991), reargument denied, December 6, 1991.
[3] The commonwealth court's previous rulings in this case involved requests for special relief in the form of a preliminary injunction, for an injunction pending appeal to the Supreme Court of Pennsylvania, and summary relief. The February 7 adjudication and decree nisi ruled upon the School Districts' petition for a declaratory judgment and, for the first time, provided a judicial interpretation of Act 25.
[4] Act of June 25, 1982, P.L. 633, reenacted and amended by Act of June 30, 1989, P.L. 73, as amended, 71 P.S. §§ 745.1-745.15.
[5] Act of October 15, 1980, P.L. 950, as amended, 71 P.S. §§ 732-101  732-506.
[6] Provisions of the Commonwealth Documents Law are found at Act of July 31, 1968, P.L. 769, as amended, 45 P.S. §§ 1102-1208, and at 45 Pa.C.S. §§ 501-907.
[7] A statement of policy may set "forth substantive or procedural . . . property rights, . . . duties, liabilities or obligations . . ., and includes,. . . any document interpreting or implementing any act of Assembly enforced or administered by such agency." Section 102 of the Commonwealth Documents Law, 45 P.S. § 1102.