721 A.2d 1061

**EIGHTY-FOUR MINING COMPANY, Appellee,**

v.

**THREE RIVERS REHABILITATION, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided Dec. 21, 1998.

Reargument Denied Feb. 10, 1999.

444

Paul F. Laughlin, Pittsburgh, for Three Rivers Rehabilitation.

Elizabeth B. Metz, Harrisburg, for Health Law & Policy, Amicus.

Phyllis T. Procopio, George H. Thompson, Pittsburgh, for Eighty–Four Min.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

We granted review in this matter to resolve whether the Anti–Referral provision of Section 306(f.1)(3)(iii) of the Pennsylvania Workers' Compensation Act[1] (Act) precludes payment for in-office physical therapy prescribed by a physiatrist[2] and performed by a physiotherapist,[3] both of whom the physiatrist's professional corporation employed.

## FACTS

Joseph Sciulli (Sciulli) sustained work-related injuries while employed as a coal miner by Eighty–Four Mining Company

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(3)(iii).

2. A physiatrist is a physician who specializes in physical medicine and rehabilitation. The American Board of Physical Medicine and Rehabilitation, *Frequently Asked Questions* (last modified Nov. 18, 1998) <http://www/consumers-public/public/faq.htm>. Physiatry focuses on restoring function to people. *Id.* To diagnose patients, physiatrists employ the same methods as other physicians, in addition to using electromyography (EMG), nerve conduction studies, and somatosensory evoked potentials. *Id.* Physiatrists treat patients with a variety of non-surgical, medical procedures and rehabilitation therapies, such as prescribing drugs or orthopedic devices, employing heat and cold therapies, and providing therapeutic exercise. *Id.* To become a physiatrist, an individual must complete four years of graduate medical education and four years of postdoctoral residency. *Id.*

3. A physiotherapist, also known as a physical therapist, is a health care professional who evaluates and treats people with health problems resulting from injury or disease. The American Physical Therapy Association, *APTA Background Sheet 1998–The Physical Therapist: A Professional Profile* (visited Nov. 23, 1998) <http://www.apt/public(1)-relations/ptfact.htm>. Treatment provided by a physiotherapist to a patient includes the utilization of variety of methods, including therapeutic exercise, cardiovascular training, and weight lifting. *Id.* Unlike a physiatrist, a physiotherapist cannot make diagnoses or prescribe drugs. To become a physiotherapist in Pennsylvania, with few exceptions, an individual must first graduate with a degree in physical therapy from a four-year college with an accredited program in physical therapy. The Physical Therapy Practice Act, Oct. 10, 1975, P.L. 383, *as amended*, 63 P.S. § 1304; 63 P.S. § 1306. In Pennsylvania, to practice physical therapy, as defined in 63 P.S. § 1302, an individual must also obtain a license from the State Board of Physical Therapy. 63 P.S. § 1304.

(Eighty–Four Mining). Afterwards, Sciulli sought treatment with Dr. William W. Frost, Jr. (Dr. Frost), a board certified physiatrist. Sciulli's first visit to Dr. Frost occurred on January 17, 1994 at Dr. Frost's only office, which was within a self-contained medical facility operated by Three Rivers Rehabilitation, Inc. (Three Rivers) in Washington, Pennsylvania.

Although Dr. Frost incorporated Three Rivers and was the sole owner of the professional corporation, he was also an employee of Three Rivers. As the only physician on staff at Three Rivers, Dr. Frost supervised all patients treated by the Three Rivers staff for physical therapy, including those under his care and those referred to Three Rivers by other physicians. Dr. Frost retained and exercised his authority to make changes or refinements to a patient's physical therapy program. Three Rivers paid the rent for all of its office space, including the office occupied by Dr. Frost. Three Rivers' billing department handled all billing, whether for treatment provided by Dr. Frost or other Three Rivers staff.

Dr. Frost obtained extensive medical history of Sciulli and performed a physical examination. Trained Three Rivers technicians then performed tests to determine the extent of Sciulli's injuries. Dr. Frost reviewed the results of the tests and diagnosed Sciulli's injury. Dr. Frost then recommended a treatment plan of physical therapy for Sciulli. Three Rivers evaluated Sciulli, a staff physiotherapist provided physical therapy to him in the facility of Three Rivers, and they sent all of Sciulli's medical bills to Eighty–Four Mining for payment. After approximately three weeks of physical therapy, Sciulli returned to work without limitations. Eighty–Four Mining believed that the bills resulted from a prohibited self-referral and refused to pay them.

On March 7, 1994, Three Rivers filed a timely application for fee review with the Bureau of Workers' Compensation, pursuant to Section 306(f.1)(5) of the Act.[4] The Workers' Compensation Board (Board) rendered an administrative decision on February 3, 1995 that Eighty–Four Mining was un-

4. 77 P.S. § 531(5).

timely in its payment of the medical bills of Three Rivers. Eighty–Four Mining requested an appeal conference concerning the administrative decision. The Board assigned the medical fee review application to a hearing officer.

On May 3, 1996, after conducting a full hearing, the hearing officer determined that Three Rivers did not violate the Act when it provided Sciulli with physical therapy prescribed by Dr. Frost. Although the hearing officer acknowledged the existence of regulations governing self-referrals,[5] she ultimately did not rely on the 1995 regulations. Instead, the hearing officer ruled that because Dr. Frost and Three Rivers were not separate entities, no unlawful referral occurred. The hearing officer granted the fee review application and ordered Eighty–Four Mining to pay Sciulli's medical bills.

Eighty–Four Mining filed a timely appeal to the Commonwealth Court, alleging that the hearing board erred as a matter of law by directing payment to Three Rivers. The Commonwealth Court reversed, finding that Dr. Frost illegally conducted a self-referral, which Section 306(f.1)(3)(iii) of the Act expressly prohibits. We granted this appeal to decide only if the Act precludes payment for an in-office physical therapy treatment prescribed by a physiatrist and performed by a physiotherapist, both employed by the physiatrist's professional corporation.

## ANALYSIS

Section 306(f.1)(3)(iii), contained in the 1993 amendments to the Worker's Compensation Act, commonly referred to as Act 44, is a medical cost containment provision. On August 31, 1993, Section 306(f.1)(3)(iii), also known as the Anti–Referral provision, became effective. The Anti–Referral provision prohibits referrals of workers' compensation claimants by health care providers for medical services, including physical therapy, to entities in which the providers have a financial interest. Section 306(f.1)(3)(iii) states, in pertinent part:

5.  34 Pa.Code § 127.301.

Notwithstanding any other provision of law, it is unlawful for a provider to refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods or services pursuant to this section if the provider has a financial interest with the person, or in the entity, that receives the referral. It is unlawful for a provider to enter into an arrangement or scheme such as a cross-referral arrangement, which the provider knows or should know has a principal purpose of assuring referrals by the provider to a particular entity which, if the provider directly made referrals to such entity, would be in violation of this section. No claim for payment shall be presented by an entity to any individual, third-party payer or other entity for a service furnished pursuant to a referral prohibited under this section.

77 P.S. § 531(3)(iii). Neither the terms of this Anti–Referral provision nor the Act, in its entirety, was clear about whether the ban on physician self-referrals included physician prescriptions for in-office physical therapy.

On August 28, 1993, the Department of Labor and Industry (Department), Bureau of Workers' Compensation, published a notice intended to give instructions on the Department's interpretation of the Anti–Referral provision and other portions of the Act, which would become effective in three days. The preamble to the notice states:

*Purpose*

The purpose of this notice is to give timely guidance to employers, employees, and insurers regarding the implementation of the provisions of Act 44 noted within this notice. In view of the imminent effective date of the applicable portions of this act, August 31, 1993, the Department anticipates that employers, employes and insurers will require guidance in moving expeditiously to comply with these provisions. This notice will also serve to inform interested members of the public of the Department's interpretation of the provisions.

*Force and Effect*

This notice provides guidance to Department staff, employers, employes, insurers and other interested parties. Its aim is to facilitate the implementation of the recent amendments to the Act. This notice does not constitute a rule or regulation with the force or effect of law. Rather, it is temporary in nature. The Department intends to promulgate regulations to implement Act 44 as soon as possible.

23 Pa. Bull. 4185 (Aug. 28, 1993). Therefore, the Department used the notice to establish temporary guidance to all interested parties until it could promulgate final regulations to implement the 1993 amendments to the Act.[6]

The notice specifically addressed the Anti–Referral provision and carved out certain exceptions that the Department intended to recognize. The Department stated that the following exceptions would apply:

*Exceptions Generally*

Section 306(f.1)(3)(iii) of the act prohibits referrals between health care providers where the referring provider has a financial interest in the person or entity receiving the referral. To create exceptions to this prohibition for referrals that are neither fraudulent nor contrary to patients' and the public's interests, the following exceptions will be recognized:

Present and future Safe Harbor regulations promulgated under the Medicare and Medicaid Patient and Program Protection Act (42 U.S.C.A. § 1320a–7b(1) and (2)), published at 42 CFR 1001.952, and present and future exceptions to the so-called Stark amendment to the Medicare Act (42 U.S.C.A. § 1395nn) and present and future regulations promulgated thereunder, will be incorporated by reference as exceptions to the provider self-referral provisions contained in section 306(f.1)(3)(iii) of the Act. An employer or an insurer will not deny payment to a health care provider

---

**6.** It was not until November 11, 1995 that the Department's final regulations, governing the ban on self-referrals in Act 44, became effective. *See* 25 Pa. Bull. 4875, 4901 (Nov. 11, 1995) (promulgating 34 Pa.Code § 127.301).

> involved in a transaction or referral that meets the incorporated Federal exceptions stated herein.

23 Pa. Bull. 4188 (Aug. 28, 1993). With that notice, the Department announced that it would be incorporating by reference certain Federal laws aimed at containing rapidly rising medical costs. The Stark Amendments to the Federal Medicare and Medicaid Acts are particularly pertinent to the facts in this case.

Congress first enacted the Stark Amendments on December 19, 1989. The original Stark Amendments, known as Stark I, prohibited a physician from making referrals for clinical laboratory services to entities in which the physician had a financial interest.[7] 42 U.S.C.A. § 1395nn(a)(1). On January 1, 1992, the self-referral ban in Stark I became effective. On August 10, 1993, Congress again amended the Stark Amendments. The 1993 Stark Amendments, known as Stark II, extended the self-referral ban to several designated health services, including physical therapy services.[8]

Congress also provided several exceptions to the self-referral ban in the Stark Amendments, which permitted a range of traditional business practices to continue. James C. Dechene and Karen P. O'Neil, *"Stark II" and State Self–Referral Restrictions*, 29 J. Health & Hosp. Law 65 (1996). The exceptions generally fall into three broad categories: (1) exceptions relating to both ownership or investment interests and compensation arrangements; (2) exceptions relating to ownership or investment interests; and (3) exceptions relating to compensation arrangements. 42 U.S.C.A. § 1395nn(b–e); James C. Dechene and Karen P. O'Neil, *"Stark II" and State*

7. Representative Peter Stark (D–Calif.) continued to advocate for an expansion of the Stark Amendments because he feared that physician ownership and referral arrangements would "erode the trust patients have traditionally placed in their physicians." John K. Inglehart, *Efforts to Address the Problems of Physician Self–Referral*, 325 New England Journal of Medicine 1820–24 (1991) (quoting Rep. Peter Stark).

8. *See* 42 U.S.C.A. § 1395nn(h)(6) (defining "designated health services"). In Stark II, as part of its expansion, Congress universally substituted the phrase "designated health services" for "clinical laboratory services."

*Self-Referral Restrictions*, 29 J. Health & Hosp. Law 65 (1996).

When the Department issued its August 28, 1993 notice, the following Stark I exception, relating to both ownership or investment interests and compensation arrangements, was in effect: [9]

(b) General exceptions to both ownership and compensation arrangement prohibitions.

Subsection (a)(1) shall not apply in the following cases:

. . .

(2) In-office ancillary services.

In the case of services -

(A) that are furnished -

(i) personally by the referring physician, personally by a physician who is a member of the same group practice as the referring physician, or personally by individuals who are employed by such physician or group practice and who are personally supervised by the physician or by another physician in the group practice, and

(ii)(I) in a building in which the referring physician (or another physician who is a member of the same group practice) furnishes physicians' services unrelated to the furnishing of clinical laboratory services, or

(II) in the case of a referring physician who is a member of a group practice, in another building which is used for the centralized provision of the group's clinical laboratory services, and

**9.** When Congress enacted Stark II in 1993, many provisions of Stark II did not apply to referrals made before January 1, 1995. *See* Historical and Statutory Notes for 42 U.S.C.A. § 1395nn, Aug. 10, 1993, Pub.L. 103–66, Title XIII, § 13562(b), 107 Stat. 596, *as amended* Pub.L. 103–432, Title I, 152(c), Oct. 31, 1994, 108 Stat. 4437 (specifically regarding designated health services). All of the Stark I exceptions became effective on January 1, 1992. *See* Historical and Statutory Notes for 42 U.S.C.A. § 1395nn, Dec. 19, 1989, Pub.L. 101–239, Title VI, § 6204(c), 103 Stat. 2236. Consequently, while Stark I and Stark II contain virtually identical exceptions, the provisions of the Stark I exceptions, as provided in the text of this opinion, apply to the facts of this case.

(B) that are billed by the physician performing or supervising the services, by a group practice of which such physician is a member, or by an entity that is wholly owned by such physician or such group practice, if the ownership or investment interest in such services meets such other requirements as the Secretary may impose by regulation as needed to protect against program or patient abuse.

42 U.S.C.A. § 1395 nn(b)(2).

With the "In–Office Ancillary Services" exception, Congress gave protection to certain auxiliary treatments. One way for a facility to avoid the effects of the Federal self-referral ban was to require the referring physician to supervise his or her staff directly when they provide auxiliary services in a building where the physician furnishes physician services that are unrelated to services provided in the referral.[10] In addition, the facility, which the physician wholly owns, must bill for the services.

■■ The physical therapy that Dr. Frost prescribed to Sciulli fit squarely into the "In–Office Ancillary Services" exception, which the Department incorporated by reference in its August 28, 1993 notice. Physical therapy is a classic example of an ancillary service because it complements a physician's treatment plan. Dr. Frost prescribed physical therapy, and a Three Rivers physiotherapist furnished the treatment to Sciulli, in the same building where Dr. Frost provided physician services, which were unrelated to the physical therapy. Three Rivers, which Dr. Frost completely owned, handled all billing for the services provided by Three Rivers and Dr. Frost. All of Sciulli's bills related to treatment for his injuries, which postdated the publication of the notice and the passage of the Anti–Referral provision. From January of 1994 to February of 1994, Three Rivers sent three bills

**10.** Although the substitution of the phrase "designated health services" for "clinical laboratory services" did not become effective until January 1, 1995, by 1993 Congress clearly intended to exclude from the ban on physician's self-referrals, a broad range of medical services, including physical therapy.

to Eighty–Four Mining for reimbursement for services provided to its employee.

Neither the hearing officer nor the Commonwealth Court relied on the "In–Office Ancillary Services" exception in reaching their decisions. However, in note 2 of its opinion, the Commonwealth Court acknowledged the existence of the exclusions set forth in Stark II but ruled that they were inapplicable. Presumably, the Commonwealth Court reached that conclusion because Sciulli's 1994 physical therapy, for which Three Rivers sought payment, predated the Department's final regulations by almost a year and there was no retroactive application of the 1995 regulations. Yet, in dictum, the Commonwealth Court stated, without explanation, that, even if it were to apply the 1995 regulations, none of the exceptions to the Anti–Referral provision would have applied.

When an agency makes an interpretation of general applicability, that policy statement lacks the force of law of a properly adopted regulation. *Central Dauphin School District v. Commonwealth, Department of Education,* 147 Pa. Cmwlth. 426, 608 A.2d 576, 581 (Pa.Cmwlth.1992) (citing *Pennsylvania Human Relations Commission v. Norristown Area School District,* 473 Pa. 334, 350, 374 A.2d 671, 679 (1977)). While a general statement of an agency's policy does not establish a binding norm upon that agency, it does announce the agency's provisional intentions for the future. *Id.* Reviewing courts have the discretion whether to accept or reject an agency's general statement of policy depending on how accurately the interpretation reflects the meaning of a statute. *Id.* (citing *Pennsylvania Human Relations Commission v. Uniontown Area School District,* 455 Pa. 52, 313 A.2d 156 (1973)).

The 1993 notice was not an improperly promulgated regulation. The Department very clearly expressed that the notice was merely an instructive guide without the full force or effect of law. In addition, we do not suggest that the 1995 regulations governed the 1994 physical therapy billed by Three Rivers. Yet, it strains this Court's imagination to understand

why the "In–Office Ancillary Services" exception, which the Department expressly incorporated by reference in its 1993 notice, and later adopted in its 1995 regulations, would not apply to the facts here.

The exceptions listed in the Department's 1995 regulations are, in all pertinent matters to this case, identical to the exceptions provided in its 1993 notice. The relevant section of the final regulations follows:

*Self Referrals*

§ 127.301. Referral Standards

. . .

(c) Referrals permitted under all present and future Safe Harbor regulations promulgated under the Medicare and Medicaid Patient and Program Protection Act at 42 U.S.C.A. § 1320a–7b(1) and (2), published at 42 CFR 1001.952 (relating to exceptions), and all present and future exceptions to the Stark amendments to the Medicare act at 42 U.S.C.A. § 1395nn, and all present and future regulations promulgated thereunder are not prohibited referrals involving financial interest. An insurer may not deny payment to a health care provider involved in such transaction or referral.

34 Pa.Code § 127.301.

Although the Commonwealth Court did not mention the 1993 notice, it acknowledged the existence of the exceptions set forth in Stark II, including the "In–Office Ancillary Services" exception, which the 1995 regulations referenced. Three Rivers was aware of the exceptions provided in the Department's 1993 notice and relied on them when it provided physical therapy to an employee of Eighty–Four Mining. Three Rivers reasonably expected that the exceptions in the administrative notice would govern its services, at least until the Department adopted its final rules. It relied on the Department's guidance, and it anticipated payment by Eighty–Four Mining.

Physical therapy is an integral part of a physiatrist's practice. Permitting in-office physical therapy enables a treating

physician directly to supervise his or her patient's rehabilitation. The intent of Section 306(f.1)(3)(iii) of the Act was to contain costs by preventing physicians from acting in their own self-interest. The Department must have determined that the legislature did not intend to proscribe useful, in-office ancillary services because it took definitive steps to exclude such services from the ban on self-referrals. First, the Department provided interim guidance in its August 28, 1993 notice. Then, on November 11, 1995, the Department promulgated final regulations that codified its earlier instructions.

The Commonwealth Court erred as a matter of law when it applied the Anti–Referral provision in isolation in its review of the Hearing Officer's Decision. The Department issued its August 28, 1993 notice to provide a temporary, but appropriate interpretation of Act 44 and announce its future intentions. Interested parties relied on the agency's policy statement for two years until the Department promulgated final regulations. Accordingly, we hold that all physical therapy prescribed by a physician and furnished by in-office physiotherapists from August 31, 1993 until November 11, 1995, which fell under the exceptions provided in the Department of Labor and Industry's 1993 notice, was excluded from the ban on self-referrals established by Section 306(f.1)(3)(iii) of the Pennsylvania Workers' Compensation Act.

## CONCLUSION

The Bureau of the Workers' Compensation hearing officer lawfully awarded Three Rivers payment, plus interest, for all its bills accrued for treating an employee of Eighty–Four Mining. We reverse the decision of the Commonwealth Court and reinstate the decision of the hearing officer.

Justices ZAPPALA and CAPPY concur in the result.