**[J-95A-2025, J-95B-2025, J-95C-2025, J-95D-2025 and J-95E-2025] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 97 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 560 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Decision of the |
| | : | Bureau of Workers' Compensation |
| | : | at No. DSP-2809684-1 dated May |
| BUREAU OF WORKERS' COMPENSATION | : | 20, 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED:  November 19, 2025 |
| | : | |
| Appellee | : | |

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 98 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 561 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Decision of the |
| | : | Bureau of Workers' Compensation |
| | : | at No. DSP-3130152-3 dated May |
| BUREAU OF WORKERS' COMPENSATION | : | 20, 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED:  November 19, 2025 |
| | : | |
| Appellee | : | |

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 99 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 562 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Decision of the |
| | : | Bureau of Workers' Compensation |
| | : | at No. DSP-2917433-2 dated May |
| BUREAU OF WORKERS' COMPENSATION | : | 20, 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED:  November 19, 2025 |
| | : | |
| Appellee | : | |

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 100 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 563 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Order of the Bureau |
| | : | of Workers' Compensation at No. |
| | : | DSP-942461-8 dated May 20, |
| BUREAU OF WORKERS' COMPENSATION | : | 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED: November 19, 2025 |
| | : | |
| Appellee | : | |
| | | |
| 700 PHARMACY, | : | No. 101 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 564 |
| | : | CD 2020 dated May 16, 2024 |
| v. | : | Affirming the Order of the Bureau |
| | : | of Workers' Compensation at No. |
| | : | DSP-3242427-2 dated May 20, |
| BUREAU OF WORKERS' COMPENSATION | : | 2020. |
| FEE REVIEW HEARING OFFICE (STATE | : | |
| WORKERS' INSURANCE FUND), | : | ARGUED: November 19, 2025 |
| | : | |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE McCAFFERY**                                    **DECIDED: June 16, 2026**

Because I conclude the plain language of the Anti-Referral Provision[1] in the Workers' Compensation Act (WCA)[2] unambiguously precludes providers from referring a person for "goods and services" if the provider has a financial interest in the entity

---

[1] *See* 77 P.S. § 531(3)(iii) ("Section 306(f.1)(3)(iii)").

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

providing those goods or services — and that phrase plainly includes prescription drugs and pharmaceutical services — I respectfully dissent.

Like the Majority, I begin with the Statutory Construction Act and its mandate that, when interpretating statutes, our goal should always be "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The best indication of the Legislature's intent is the plain language of the statute. *See Commonwealth v. Lehman*, 311 A.3d 1034, 1044 (Pa. 2024) (citation omitted).

Section 306(f.1)(3)(iii)'s Anti-Referral Provision explicitly prohibits a provider from referring "a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, **goods or services** pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral." 77 P.S. § 531(3)(iii) (emphasis added). Under a plain reading of the provision, "goods and services" is a catch-all phrase, which includes prescription drugs (goods) and pharmaceutical services (services).

While the Majority concedes "[t]his interpretation may appear reasonable if the phrase … is read in isolation[,]" it insists that "[w]hen read in the context of the Anti-Referral Provision as a whole, the unreasonableness of [this interpretation] becomes clear[.]" Majority Opinion at 11. The Majority focuses on the presumption that "the legislature did not intend any statutory language to exist as mere surplusage[.]" *Commonwealth by Shapiro v. Golden Gate National Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018) (citation omitted). In its view, if we interpret the phrase "goods and services" as a catch-all, we will "ignore the enumerated services" listed before the phrase. Majority Opinion at 11-12. According to the Majority, "the only interpretation that gives effect to the entirety" of the provision is to read the phrase "goods and services" as modifying the enumerated medical services that precede it. *Id.* at 12.

In my view, however, that interpretation undermines the undisputed intent of the Anti-Referral Provision, which is "to contain costs by preventing physicians from acting in their own self-interest." *Eighty-Four Min. Co. v. Three Rivers Rehab., Inc.*, 721 A.2d 1061, 1067 (Pa. 1998). This Court previously declared Section 306(f.1)(3)(iii) a "medical cost containment provision." *Id.* at 1063. If we were to interpret the phrase "goods and services" as the Majority asserts, physicians (such as Drs. Purewal and Jalali) would be emboldened to prescribe unnecessary (and perhaps harmful) medications in order to profit from a pharmacy in which they have a financial interest — and the concomitant costs of workers' compensation benefits certainly would increase. The only way to insure the irrefutable intent of the Legislature is pursued is to read the phrase "goods and services" broadly, pursuant to its plain language. After all, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When that intention is clear, we should interpret the statute to achieve that objective. Thus, in my view, the phrase "goods and services" in the Anti-Referral Provision unambiguously refers to **all** goods and services in which the provider has a financial interest.

Nevertheless, even if I were to conclude the provision is ambiguous,[3] I still would arrive at the same conclusion. When statutory language is ambiguous, Section 1921(c) of the Statutory Construction Act[4] guides our quest for the legislature's intent. *See* 1 Pa.C.S. § 1921(c). The provision directs us to consider:

(1) The occasion and necessity for the statute.

---

[3] "A statute is ambiguous were there are at least two reasonable interpretations of the text under review." *Warrantech Consumer Prods. Servs., Inc. v. Reliance Ins. Co. in Liquidation,* 96 A.3d 346, 354-355 (Pa. 2014). One could argue that both the Majority's interpretation and my interpretation of the phrase "goods and services" are reasonable.

[4] 1 Pa.C.S. §§ 1921-1991.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c)(1)-(8).

The Anti-Referral Provision was added to Section 306(f.1) as part of the General Assembly's comprehensive 1993 Amendments to the WCA. *See* 1993, July 2, P.L. 190, No. 44, § 8, effective in 60 days. The 1993 Amendments, which rewrote Section 306(f.1), also designated maximum allowances for medical services and supplies, including prescription drugs and pharmaceutical services. *See* 77 P.S. § 531(c)(3)(i), (vi)(A). Thus, the cost containment concerns of the Anti-Referral Provision are evident throughout the 1993 revision of Section 306(f.1).

As noted above, the "mischief to be remedied" by Anti-Referral Provision was to prevent "physicians from acting in their own self-interest[,]" and the "object to be attained" was "medical cost containment." *Eighty-Four Min. Co.*, 721 A.2d at 1063, 1067. Both of these factors favor a broad reading of "goods and services." Indeed, it is reasonable to presume that a provider's financial interest in a pharmacy would have a greater impact on workers' compensation costs than his interest in an entity providing, for example, home infusion therapy, one of the enumerated services in the provision. Far more patients are prescribed medications than referred to home infusion therapy. The Majority's only retort to this is that recognition of the General Assembly's cost-containment intent "does not necessarily mean [it] barred treating physicians from making self-referrals for every

possible type of service." Majority's Opinion at 18. However, the General Assembly's inclusion of the broad phrase "goods and services" after the enumerated medical services means just that — all possible types of medical goods and services.

This leads to another principle supporting my reading of the provision — the consequences of a particular interpretation. Under the Majority's construction, a provider could own and operate a pharmacy, to which he refers all of his patients. However, that same provider would be prohibited from referring a patient for "laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging" in which he has a financial interest. 77 P.S. § 531(3)(iii). If the intent of the provision is — as this Court has held — to prevent physicians from acting in their own self-interest and contain costs, my interpretation of the statutory language best achieves that goal.

The only factor that supports the Majority's interpretation is the administrative interpretation of the provision. The Bureau of Workers' Compensation Regulations describe the Anti-Referral Provision as follows: "[A] provider may not refer a person for **certain** treatment and services if the provider has a financial interest with the person or in the entity that receives the referral." 34 Pa. Code § 127.301(a) (emphasis added). The Majority highlights the word "certain" to assert that the Anti-Referral Provision is "limited to the eight specific services enumerated[.]" Majority Opinion at 22. While this interpretation is in line with the Majority's position, it is the only factor that favors a narrow application of the phrase "goods and services."

Lastly, I address the Majority's assertion that had the General Assembly intended to prohibit self-referrals for drugs and pharmaceutical services, it could have explicitly done so two subsections later in Section 306(f.1)(3)(vi), which addresses reimbursements for prescription drugs and pharmaceutical service. *See* Majority's Opinion at 20 (*citing*

77 P.S. § 531(3)(vi)).  As the Majority acknowledges, Section 306(f.1)(3)(vi) provides maximum allowable reimbursement rates for pharmaceuticals.  It also includes safety provisions so that those prescribing medications, as well as those filling the prescriptions, are doing so properly.  *See* 77 P.S. § 531(3)(vi)(B), (E) (for example, requiring National Drug Code number on bills and reports, and providing supply limitations for any provider, other than a licensed pharmacy, to seek reimbursements for drugs dispensed).  Subsection (vi) does not discuss self-referrals because the Anti-Referral Provision in Subsection (iii) already prohibits a provider from referring a patient for "goods or services **pursuant to this section** if the provider has a financial interest with the person or in the entity that receives the referral."  77 P.S. § 531(3)(iii) (emphasis added).  Thus, the Anti-Referral Provision applies to all of Section 306(f.1), including the drug and pharmaceutical reimbursement provisions.

Because I conclude that the WCA's Anti-Referral Provision in Section 306(f.1)(3)(vi) plainly and unambiguously prohibits medical providers from referring patients to pharmacies in which the provider has a financial interest, I would affirm the decision of the Commonwealth Court.