**[J-95A-2025, J-95B-2025, J-95C-2025, J-95D-2025 and J-95E-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| 700 PHARMACY, | : | No. 97 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 560 CD |
| | : | 2020 dated May 16, 2024 Affirming |
| v. | : | the Decision of the Bureau of |
| | : | Workers' Compensation at No. DSP- |
| | : | 2809684-1 dated May 20, 2020. |
| BUREAU OF WORKERS' | : | |
| COMPENSATION FEE REVIEW HEARING | : | ARGUED:  November 19, 2025 |
| OFFICE (STATE WORKERS' INSURANCE | : | |
| FUND), | : | |
| | : | |
| Appellee | : | |
| | | |
| 700 PHARMACY, | : | No. 98 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 561 CD |
| | : | 2020 dated May 16, 2024 Affirming |
| v. | : | the Decision of the Bureau of |
| | : | Workers' Compensation at No. DSP- |
| | : | 3130152-3 dated May 20, 2020. |
| BUREAU OF WORKERS' | : | |
| COMPENSATION FEE REVIEW HEARING | : | ARGUED:  November 19, 2025 |
| OFFICE (STATE WORKERS' INSURANCE | : | |
| FUND), | : | |
| | : | |
| Appellee | : | |
| | | |
| 700 PHARMACY, | : | No. 99 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 562 CD |
| | : | 2020 dated May 16, 2024 Affirming |
| v. | : | the Decision of the Bureau of |
| | : | Workers' Compensation at No. DSP- |
| | : | 2917433-2 dated May 20, 2020. |
| | : | |

BUREAU OF WORKERS'
COMPENSATION FEE REVIEW HEARING
OFFICE (STATE WORKERS' INSURANCE
FUND),

        Appellee

: ARGUED:  November 19, 2025
:
:
:
:
:
:

700 PHARMACY,

        Appellant

        v.

BUREAU OF WORKERS'
COMPENSATION FEE REVIEW HEARING
OFFICE (STATE WORKERS' INSURANCE
FUND),

        Appellee

: No. 100 MAP 2024
:
: Appeal from the Order of the
: Commonwealth Court at No. 563 CD
: 2020 dated May 16, 2024 Affirming
: the Order of the Bureau of Workers'
: Compensation at No. DSP-942461-8
: dated May 20, 2020.
:
: ARGUED:  November 19, 2025
:
:
:
:
:

700 PHARMACY,

        Appellant

        v.

BUREAU OF WORKERS'
COMPENSATION FEE REVIEW HEARING
OFFICE (STATE WORKERS' INSURANCE
FUND),

        Appellee

: No. 101 MAP 2024
:
: Appeal from the Order of the
: Commonwealth Court at No. 564 CD
: 2020 dated May 16, 2024 Affirming
: the Order of the Bureau of Workers'
: Compensation at No. DSP-3242427-
: 2 dated May 20, 2020.
:
: ARGUED:  November 19, 2025
:
:
:
:
:
:

## OPINION

**JUSTICE MUNDY**                                      **DECIDED:  June 16, 2026**

In 1993, the General Assembly enacted Act 44 amending the Workers' Compensation Act (the "WCA" or the "Act").[1] Included in those amendments was Section 306(f.1)(3)(iii), *see* 77 P.S. § 531(3)(iii), commonly referred to as the Anti-Referral Provision. That provision states, in pertinent part, that:

> Notwithstanding any other provision of law, it is unlawful for a provider to refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods or services pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral.

77 P.S. § 531(3)(iii).

In these consolidated appeals we must determine whether the Anti-Referral Provision's prohibition on self-referrals is limited to the eight enumerated categories of services or whether the phrase "goods or services" acts as a catchall category bringing unenumerated types of services, including prescription drugs and professional pharmaceutical services, within the provision's purview. After careful consideration, we determine the plain language of the statute evidences that the ban on self-referrals is limited to the enumerated list. We therefore reverse the holding of the Commonwealth Court.

The pertinent facts in each of the consolidated cases are identical. Drs. Miteswar Purewal and/or Shailen Jalali were the treating physicians for several patients who had sustained injuries arising during the course of the patients' respective employment. As a result of their work-related injuries, the patients were receiving workers' compensation benefits pursuant to the WCA and were considered claimants under the Act. As part of the claimants' treatment plans, Drs. Purewal and/or Jalali wrote prescriptions for various medications, which were filled by 700 Pharmacy (the "Pharmacy"). The State Workers' Insurance Fund (the "Insurer"), the insurance carrier for the claimants' respective

---

[1] Act of June 2, 1915, P.L. 736, No. 338 (as amended, 77 P.S. §§ 1-1041.4; 2501-2625).

employers, however, refused to pay for the claimants' prescriptions. As a result of the Insurer's refusal, the Pharmacy filed Fee Review Applications in the Bureau of Workers' Compensation (the "Bureau") Medical Fee Review Office. In response to the Pharmacy's petitions, the Insurer asserted it was not required to pay for the prescriptions pursuant to the Anti-Referral Provision because the prescriptions were the result of unlawful self-referrals. The matters were thus scheduled for hearings before a hearing officer from the Medical Fee Review Hearing Office.

Before the hearing officer, Drs. Purewal and Jalali stipulated that they had a financial interest in the Pharmacy. Despite that stipulation, the Pharmacy contended that the treatments in question did not have their genesis in prohibited self-referrals because the Anti-Referral Provision does not include a bar on self-referrals for prescription drugs and pharmaceutical services. The hearing officer rejected this argument, instead finding that while the Anti-Referral Provision does not specifically identify prescription drugs, prescriptions for medications are plainly captured within the statute's inclusion of "goods or services." According to the hearing officer, in light of the WCA's "foundational liability principle" that employers are required to provide payment for claimants' reasonable surgical and medical supplies, including, *inter alia*, "medicines and supplies, as and when needed," Hearing Officer Decision, Conclusions of Law, ¶ 4 (quoting 77 P.S. § 531(1)(i))[2], it would be "unsatisfactory to believe that medications are not included in the phrase [ ] 'goods or services.'" *Id.*

---

[2] The hearing officer issued five separate opinions, one for each individual claimant. The findings of fact and conclusions of law in each opinion are identical, save for details related to each claimants' respective treatment that are not relevant to our analysis. For ease of discussion, we will cite only to the opinion in the matter pertaining to Aleathia Johnson, MF-573565, *et. al.* All cited findings of fact and conclusions of law, however, are equally applicable to the cases pertaining to all five claimants.

The hearing officer further relied on our statement in *Eighty-Four Mining Co. v. Three Rivers Rehabilitation,* 721 A.2d 1061 (Pa. 1998), that the purpose of the Anti-Referral Provision was to "contain costs by preventing physicians from acting in their own self-interest." *Id.* (quoting *Eighty-Four Mining*, 721 A.2d at 1067). To that end, the hearing officer concluded that the Department of Labor & Industry (the "Department"), through its regulations, "made clear that the legislature, with Act 44, was intending for [the Anti-Referral Provision] to put into practice the federal Stark [a]mendments[3], which prohibited self-referrals under the Medicare program." *Id.* In support of this conclusion, the hearing officer cited the Department's Medical Cost Containment regulations, which state, *inter alia*, "[r]eferrals permitted under all present and future Safe Harbor regulations promulgated under [the Medicare Act] …, and all present and future exceptions to the Stark amendments to the Medicare Act …, and all present and future regulations promulgated thereunder are not prohibited referrals involving financial interest …." *Id.* (quoting 34 Pa. Code § 127.301(c)). Importantly, the hearing officer observed that the Stark amendments explicitly include "outpatient prescription drugs" among the designated health services ("DHS") for which physicians are prohibited from making self-referrals. *Id.* On the other hand, prescription drugs are not included in any of the Stark amendment's safe harbor regulations exempting certain self-referrals from that prohibition. *Id.*

Based on the foregoing, the hearing officer found the at-issue treatments had "their genesis in [ ] prohibited self-referral[s]" and, thus, denied the Pharmacy's fee review

---

[3] The Stark amendments is a reference to Section 1877 of the federal Social Security Act, 42 U.S.C. § 1395nn, which bans self-referrals for designated health services ("DHS") under the Medicare program. Outpatient prescription drugs are included in the definition of DHS. 42 U.S.C. § 1395nn(h)(6). The statute also includes exceptions to the general ban on self-referrals, but outpatient prescription services are not included in any of those exceptions. *See id.* at 1395nn(b).

applications. *Id.* The Pharmacy petitioned the Commonwealth Court for review of the hearing officer's decision.[4] Before the Commonwealth Court, the Pharmacy again argued that the Anti-Referral Provision's bar on self-referrals applied only to the categories of services specifically enumerated in the statute, and that since prescription drugs and professional pharmaceutical services are not among those enumerated categories, they are not encompassed within the Anti-Referral Provision's ambit. The court rejected the Pharmacy's argument and affirmed the hearing officer's determination.[5]

The court first addressed[6] the Pharmacy's argument that the Anti-Referral Provision does not encompass prescription drugs and professional pharmaceutical services and that the phrase "goods or services" must be construed in light of the

---

[4] While the hearing officer denied the Pharmacy's fee review applications, he did determine that the Pharmacy was a healthcare provider with standing to initiate a Fee Review Application pursuant to Section 109, 77 P.S. § 29, and Section 306(f.1)(5), 77 § 531(5), of the WCA. Hearing Officer Decision, Conclusions of Law, ¶ 3. The Insurer petitioned the Commonwealth Court for review of this determination. The court affirmed the hearing officer's determination and the Insurer failed to petition this Court for allowance of appeal of that holding. As such, we will not discuss that issue further.

[5] Similar to the hearing officer, the Commonwealth Court issued five separate opinions in these matters, one for each individual claimant. The court issued a published opinion in *700 Pharmacy v. Bureau of Workers' Compensation Fee Review Hearing Office*, 315 A.3d 914 (Pa. Cmwlth. 2024), and then four unpublished memorandum opinions, affirming the hearing officer's determination on the basis of its analysis in *700 Pharmacy*. For ease of reference, all citations are to *700 Pharmacy*, but the court's analysis is applicable to all five cases.

[6] The court began its analysis by recognizing the issue before it was one of statutory interpretation. Accordingly, the panel observed that the ultimate goal of statutory interpretation is to ascertain the intent of the General Assembly and that the words of a statute "where clear and free from all ambiguity … are presumed to be the best indication of legislative intent." *700 Pharmacy*, 315 A.3d at 924 (quoting *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 531 (Pa. 2003)). Only when the statute is ambiguous, the court maintained, may it consider administrative interpretations. *Id.* (citing 1 Pa.C.S. § 1921(c)). The court continued that a statute is ambiguous when it is subject to at least two reasonable interpretations. *Id.* (internal citation omitted).

preceding more specific terms pursuant to Section 1903(b) of the Statutory Construction Act[7], 1 Pa.C.S. § 1903(b).[8] According to the court, it previously explained that Section 1903(b) was a codification of the *ejusdem generis* canon of construction, which provides that "where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." *700 Pharmacy*, 315 A.3d at 924 (quoting *S.A. by H.O. v. Pittsburgh Pub. Sch. Dist.*, 160 A.3d 940, 946 (Pa. Cmwlth. 2017)). The panel continued that typically the *ejusdem generis* canon involves a "catchall" phrase following or preceding a specific enumeration such as "including but not limited to" or "any other." *Id.* (internal citations omitted).

The court acknowledged that the Anti-Referral Provision does not include any such paradigmatic catchall phrase but nevertheless concluded that the lack of such language did not preclude it from reading "goods or services" as a catchall category. *Id.* While recognizing the case was not dispositive, the court noted that in *Bennett v. Jeld Wen, Inc. (Workers' Comp. Appeal Bd.),* 306 A.3d 949 (Pa. Cmwlth. 2023), it "read the [phrase] 'goods or services' quite naturally as serving as a catchall term to include other types of goods or services not specifically enumerated" in the Anti-Referral Provision and the language could be read as "it is unlawful for a provider to refer a person for … goods or services." *Id.* (quoting *Bennett*, 306 A.3d at 959) (ellipsis in original and emphasis removed). Accordingly, the court read the phrase "goods or services" to "suggest the General Assembly did not intend to restrict the [A]nti-[R]eferral [P]rovision's sweep only to the specific items enumerated but left a broader category open." *Id.* Observing that

---

[7] 1 Pa.C.S. §§ 1901–1991.

[8] "General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa.C.S. § 1903(b).

the Act does not define "goods," the court, relying on the dictionary definition, defined the term as "things that are produced for sale … merchandise, wares … economic assets which have tangible, physical form (contrasted with services)." *Id.* (ellipses in original and internal citation omitted). Employing this definition, the court agreed with the Insurer that prescription drugs qualify as "goods" under the Anti-Referral Provision. Moreover, applying the *ejusdem generis* canon, the court found that "the enumerated items are wide-ranging topics across medical disciplines" which "are all medical in nature, and drugs and pharmaceutical services fall within the 'same general nature or class as those enumerated.'" *Id.* (quoting *S.A.*, 160 A.2d at 946). As such, the court concluded that prescription drugs and professional pharmaceutical services fall comfortably within the Anti-Referral Provision's "goods or services" catchall.

Having concluded the plain text of the Anti-Referral Provision covers prescription drugs and professional pharmaceutical services, the court found the hearing officer properly denied and dismissed the Pharmacy's fee applications because they originated from prohibited self-referrals.

The Pharmacy filed five separate petitions for allowance of appeal raising an identical issue, which this Court granted:

> Section 306(f.1)(3)(iii) of the Workers' Compensation Act makes it "unlawful for a provider to refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods or services pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral." Because this provision neither includes nor refers to "prescription drugs" or "professional pharmaceutical services," is a pharmacy entitled to payment for prescription drugs and pharmaceutical services provided to a [c]laimant whose physician has a financial interest in the pharmacy?

*700 Pharmacy v. Bureau of Workers' Comp. Fee Review Hrg. Office*, 330 A.3d 1244 (*per curiam*). This issue presents the Court with a question of statutory interpretation, which

is a question of law. As such, our standard of review is *de novo* and our scope of review is plenary. *Schmidt v. Schmidt, Kirifides and Rassia, PC (Workers' Comp. Appeal Bd.)*, 333 A.3d 310, 318 (Pa. 2025)).

With respect to questions of statutory interpretation, we are guided by the Statutory Construction Act, which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The act further directs that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* at § 1921(b); *see also Miller v. Cnty. Of Centre*, 143 A.3d 917, 922 (Pa. 2016) ("A statute's plain language generally provides the best indication of legislative intent." (internal citation omitted)). As such, it is only when a statute is ambiguous that we may attempt to ascertain the General Assembly's intent by taking into account considerations outside the statutory text, such as the object to be attained by the statute, the consequences of a particular interpretation, and administrative interpretations of the statute. 1 Pa.C.S. § 1921(c)(4), (6), and (8).

A statute is ambiguous when it is subject to two or more reasonable interpretations. *City of Phila. v. City of Phila. Tax Review Bd. ex rel. Keystone Health Plan East, Inc.*, 132 A.3d 946, 952 (Pa. 2015). However, courts "must not overlabor to detect or manufacture ambiguity where the language reveals none." *Franczyk v. Home Depot, Inc.*, 292 A.3d 852, 856 n.17 (Pa. 2023) (quoting *Sivick v. State Ethics* Comm'n, 238 A.3d 1250, 1265 (Pa. 2020)). To this end, "[w]hen the words of a statute are free and clear of all ambiguity, we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa.C.S. § 1921(b)). In this vein, when interpretating a statute "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved

usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a); *see also Centolanza v. Lehigh Valley Dairies, Inc.*, 658 A.2d 336, 340 (Pa. 1995) ("Absent a definition in the statute, statutes are presumed to employ words in their popular and plain everyday sense, and the popular meaning of such words must prevail.").

Additionally, we "interpret statutory language not in isolation but with reference to the context in which it appears" and "do not dissect statutory text and interpret it in a vacuum." *Schmidt*, 333 A.3d at 318 (quoting *Commonwealth v. Kingston*, 143 A.3d 917, 922, 924 (Pa. 2016)). To this end, "where the legislature includes specific language in one section of the statute and excludes it from another the language should not be implied where excluded." *Fletcher*, 985 A.2d at 684. Likewise, where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent. *Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999). Further, "[e]very statute shall be construed, if possible, to give effect to all its provisions," 1 Pa.C.S. § 1921(a), and, therefore, "interpreting language as mere surplusage is disfavored." *Jackiw v. Soft Pretzel Franchise (Workers' Comp. Appeal Bd.)*, 329 A.3d 1152, 1156 (Pa. 2025); *see also* 1 Pa.C.S.§ 1922(2) (directing a presumption "[t]hat the General Assembly intends the entire statute to be effective and certain"). Specifically with respect to the WCA, "we have recognized that it 'is remedial in nature and is intended to benefit workers,'" and, therefore, it "must be liberally construed in order to effectuate its humanitarian objectives." *Schmidt*, 333 A.3d at 318 (quoting *Martin v. Workers' Comp. Appeal Bd. (Emmaus Bakery)*, 652 A.2d 1301, 1303 (Pa. 1995)).

To answer the question before us we must interpret the Anti-Referral Provision of the WCA. We begin our analysis, as required by the Statutory Construction Act, with the Anti-Referral Provision's plain language:

> Notwithstanding any other provision of law, it is unlawful for a provider to refer a person for laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy or diagnostic imaging, goods or services pursuant to this section if the provider has a financial interest with the person or in the entity that receives the referral. It is unlawful for a provider to enter into an arrangement or scheme such as a cross-referral arrangement, which the provider knows or should know has a principal purpose of assuring referrals by the provider to a particular entity which, if the provider directly made referrals to such entity, would be in violation of this section. No claim for payment shall be presented by an entity to any individual, third-party payer or other entity for a service furnished pursuant to a referral prohibited under this section.

77 P.S. § 531(3)(iii). Precisely, we must determine whether the statute's prohibition on self-referrals is limited to the eight enumerated categories of services or whether, as the courts below determined, the phrase "goods or services" is an independent catchall category that brings other unenumerated categories, such as prescription drugs and professional pharmaceutical services, within the provision's scope.

The Commonwealth Court adopted its prior determination in *Bennett* that the Anti-Referral Provision could be read as "it is unlawful for a provider to refer a person for … goods or services." *700 Pharmacy*, 3315 A.3d at 925 (quoting *Bennett*, 306 A.3d at 959).[9] This interpretation may appear reasonable if the phrase "goods or services" is read in isolation. We do not, however, interpret statutory language in isolation, but rather "with reference to the context in which it appears." *Schmidt*, 333 A.3d at 318 (quoting *Kingston*, 143 A.3d at 922). When read within the context of the Anti-Referral Provision as a whole, the unreasonableness of the court's reading becomes clear because it ignores the

_____

[9] In discussing *Bennett*, the Commonwealth Court acknowledged that the precise question of the interpretation of "goods or services" was not before the court in that case. *700 Pharmacy*, 315 A.3d at 925.

enumerated services that proceed "goods or services."[10]  The proper reading of the Anti-Referral Provision's plain language is that the phrase "goods or services" modifies the enumerated medical services such that it is necessary to read "goods or services" after each enumerated service, *i.e.* "it is unlawful for a provider to refer a person for laboratory … goods or services pursuant to this section[;]" "it is unlawful for a provider to refer a person for physical therapy … goods or services pursuant to this section[;]" "it is unlawful for a provider to refer a person for rehabilitation … goods or services pursuant to this section;" etc.  This is the only interpretation that gives effect to the entirety of the Anti-Referral Provision.  *See* Pa.C.S. § 1921(a).  Thus, the plain language of the statute makes clear the General Assembly did not intend for "goods or services" to be a catchall category bringing non-enumerated medical services within the Anti-Referral Provision's prohibition on self-referrals.  An *ejusdem generis* analysis is, therefore, unnecessary.

This interpretation is supported by the Anti-Referral Provision's structure.  The pertinent part of the provision reads "it is unlawful for a provider to refer a person for

---

[10] The Commonwealth Court found "goods or services" to be a catchall category and then applied an *ejusdem generis* analysis to "find that the enumerated items are wide-ranging topics across medical disciplines" that "are all medical in nature, and drugs and pharmaceutical services fall within the same general nature or class as those enumerated."  *700 Pharmacy*, 315 A.3d at 925 (internal quotations omitted).  With this interpretation the court attempted to limit the definition of "goods or services" by acknowledging the proceeding enumerated services.  In Justice McCaffery's interpretation, however, there is no such limitation.  His dissent finds the phrase "goods or services" "unambiguously refers to **all** goods and services in which the provider has a financial interest."  Dis. Op. at 4 (McCaffery, J.) (emphasis in original).  Likewise, Justice Wecht interprets the phrase "goods or services" to represent two additional distinct categories of prohibited self-referrals.  Dis. Op. at 5 (Wecht, J.)  These interpretations completely ignore the General Assembly's inclusion of the enumerated services, rendering them absolutely meaningless, in clear violation of the Statutory Construction Act.  *See* 1 Pa.C.S. § 1921(a) ("[e]very statute shall be construed, if possible, to give effect to all its provisions.").  Justice Wecht concedes that "under [his] interpretation, the legislature did not need to include the first eight examples of prohibited self-referrals in the statute."  Dis. Op. at 6 (Wecht, J.).  The legislature, however, did include the enumerated prohibited self-referrals and that inclusion must mean something.

laboratory, physical therapy, rehabilitation, chiropractic, radiation oncology, psychometric, home infusion therapy **or** diagnostic imaging, goods or services pursuant to this section[.]" 77 P.S. § 531(3)(iii) (emphasis added). Recently in *Coleman v. Parkland School District*, 346 A.3d 1266 (Pa. 2025), we interpreted Subsection 712.1(a) of the Sunshine Act[11], which states "[e]xcept as provided in subsection (b), (c), (d), **or** (e), an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the" Sunshine Act's notification requirements. 66 Pa.C.S. § 712.1(a) (emphasis added). The Commonwealth Court had held that Subsection 712.1(a) had created only three independent notice exceptions and that Subsection 712.1(e) was a procedural mechanism, finding that if Subsection 712.1(e) was "treated as a standalone exception, it would swallow the entire rule that the agency shall post the agenda 24 hours in advance of a meeting." *Coleman,* 346 A.3d at 1271. In reversing the lower court, we stated:

> Utilizing its plain disjunctive meaning, the use of the term "or" in this context indicates that there are four exceptions to the prohibition set forth in subsections (b) through (e). *See In re Paulmier*, 937 A.2d 364, 373 (Pa. 2007), *as clarified* (Dec. 28, 2007) (stating that the word "or" is a conjunction that is used to connect words, phrases, or clauses representing alternatives" and therefore, is "disjunctive" because it "means one or the other of two or more alternatives"); *see also Or*, WEBSTER'S II DICTIONARY (3d ed. 2005) (stating the term "or" is used "to indicate … [a]n alternative").

*Id.* (footnote omitted). Giving "or" its common definition, we found "[S]ubsection 712.1(a) plainly sets the stage for the rest of Section 712.1, where we expect to find four exceptions delineated in subsections (b) through (e), not one exception divided into four parts or three exceptions and a procedural mechanism." *Id.*

---

[11] 65 Pa.C.S §§ 701-716.

Giving the term "or" between "home infusion therapy" and "diagnostic imaging" the same common disjunctive definition, *see* Pa.C.S. § 1903(a), indicates that the enumerated services constitute a list of eight alternative services for which providers are prohibited from providing self-referrals and not eight alternative services followed by an additional catchall category. In the context of the Self-Referral Provision, the enumerated services amount to a list of alternatives that together are modified by the phrase "goods or services." If, instead, the General Assembly intended "goods or services" to be included in that list, it would have placed the "or" between "diagnostic imaging" and "goods or services," thus creating a list of nine alternative categories of prohibited self-referrals.[12]

The Insurer agrees that the plain language of the Anti-Referral Provision controls but nevertheless contends that our holdings in *Schmidt* and *Eighty-Four Mining* demand an alternative interpretation.[13] In *Schmidt* we were tasked with determining whether CBD oil prescribed to a claimant by a health care provider was included in the meaning of the phrase "medicines and supplies" in Section 306(f.1)(i) of the WCA, *see* 77 P.S. § 531(1)(i). As part of our analysis, we noted "our previous recognition that the WCA 'clearly and unambiguously provides that employers and insurers are obligated to pay providers …

---

[12] In his dissent Justice Wecht criticizes us for supposedly disregarding the comma before "goods or services," in support of his determination that the Anti-Referral Provision contains ten distinct prohibitions. However, in addition to this interpretation requiring the insertion of a comma the legislature did not include, see Dis. Op. at 4 (Wecht, J.), it also requires the deletion of the "or" between "home infusion therapy" and "diagnostic imaging." The inclusion of that "or" indicates the General Assembly intended to create a list of eight prohibited self-referrals. If, as Justice Wecht insists, the legislature intended to create a list of ten prohibited self-referrals, the inclusion of that "or" does not make any sense. Thus, Justice Wecht's interpretation requires the Court to add a comma between "goods" and "services," delete the "or" between "home infusion therapy" and "diagnostic imaging," and conclude the legislature included the eight enumerated categories of self-referrals for absolutely no reason.

[13] The Insurance Federation of Pennsylvania, American Property Casualty Insurance Association, and Pennsylvania Defense Institute filed an *amicus curiae* brief in support of the Insurer.

for reasonable and necessary *treatment or services* connected to claimants' work-related injuries.'" *Schmidt*, 333 A.3d at 319 (quoting *Keystone RX LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 265 A.3d 322, 332 (Pa. 2021)) (emphasis and ellipses in original). We continued:

> It appears that we have viewed Section 306(f.1)(1) as the defining provision of employers' and insurers' responsibilities regarding payment of medical expenses for certain treatment and services – *i.e.*, those that are reasonable and necessary to a claimant's work-related injury. Accordingly, we do not limit our construction of Section 306(f.1)(1) to the individual terms "medicines" and "supplies." Rather, in so construing, we give effect to "medicines and supplies" as provided in the statute as the broad-encompassing phrase intended by the General Assembly, evinced by the plain language thereof.

*Id.* We therefore construed "medicines and supplies" as "any item that is part of a health care provider's treatment plan for a work-related-injury." *Id.* at 329-330. We held this definition includes CBD oil prescribed by a treating physician as part of a claimant's treatment plan.

According to the Insurer, our analysis in *Schmidt* "demonstrates the importance of looking to prior cases in which the legislative intent of the text was discussed when the meaning of statutory text is at issue[,]" and that "[i]f the noted legislative intent supports a plain language reading of the statutory text … the statute will be declared unambiguous." Appellee's Brief at 15-16. To this end, the Insurer turns to our opinion in *Eighty-Four Mining*. The issue before the Court in that case was whether the Anti-Referral Provision precluded payment for in-office physical therapy prescribed by a physician and performed by a therapist employed by the physician's professional corporation.

We began our analysis by noting that the Anti-Referral Provision was included in the then-recent Act 44 WCA amendments and was "a medical cost containment provision." *Eighty-Four Mining*, 721 A.2d at 1063. While referrals for physical therapy are unambiguously within the Anti-Referral Provision's ban, we observed that "[n]either

the terms of th[e] Anti-Referral Provision nor the [WCA], in its entirety, [were] clear about whether the ban on physician self-referrals included physician prescriptions for in-office physical therapy." *Id*. To answer that question we turned to a notice the Department published to give instructions on its interpretation of the Anti-Referral Provision.[14] The notice indicated the Department's intention to incorporate the present and future federal Safe Harbor regulations and exceptions to the Stark amendments and that "[a]n employer or an insurer will not deny payment to a health care provider involved in a transaction or referral that meets the incorporated Federal exceptions[.]" *Id.* at 1064 (quoting 23 Pa. Bull. 4188 (Aug. 28, 1993)). At the time the notice was published those federal exceptions included an exception for "in-office ancillary services." *Id.* at 1065 (citing 42 U.S.C. § 1395nn(b)(2)). We concluded that the referral for in-office physical therapy satisfied the in-office ancillary services exception and was resultingly excluded from the Anti-Referral Provision's ban on self-referrals.

The Insurer, similarly to Justice McCaffery's dissent, latches on to our statements in *Eighty-Four Mining* that the Anti-Referral Provision "is a medical cost containment provision" and that the intent of the provision "was to contain costs by preventing physicians from acting in their own self-interest." *Id.* at 1063, 1067. Relying on these statements, the Insurer asserts "it is undeniable that the legislative intent of the [A]nti-[R]eferral [P]rovision is to contain medical costs by preventing physicians from self-dealing in the workers' compensation arena." Appellee's Brief at 18. The Insurer

---

[14] The Department published the notice to "provide[ ] guidance to Department staff, employers, employes, insurers and other interested parties. Its aim [was] to facilitate the implementation of the recent amendments to the Act. Th[e] notice [did] not constitute a rule or regulation with the force or effect of law. Rather, it [was] temporary in nature. The Department intend[ed] to promulgate regulations to implement Act 44 as soon as possible." *Eighty-Four Mining*, 721 A.2d at 1064 (quoting 23 Pa. Bull. 4185 (Aug. 28, 1993)). The Department subsequently promulgated regulations implementing Act 44's amendments, including the Anti-Referral Provision.

therefore asserts we "should construe 'goods or services' as a broad-encompassing phrase, intended by the General Assembly, evinced by the plain language thereof, just as [we] did with the statutory text in question, also under Section 306 of the [WCA], in *Schmidt.*" *Id.* at 18-19. According to the Insurer, "[b]anning prescription drugs and professional pharmaceutical services self-referrals fully comports with the stated legislative intent and interpreting the [A]nti-[R]eferral [P]rovision through this type of plain language contextual analysis is consistent with the rules of statutory construction." *Id.* at 19.

The Insurer's reliance on *Schmidt* and *Eighty-Four Mining* is misplaced. As explained above, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see also Miller*, 143 A.3d at 922 ("A statute's plain language generally provides the best indication of legislative intent." (internal citation omitted)). Only when the plain language of the statute is not explicit may we consider other matters to ascertain the legislature's intent, including the mischief to be remedied and the object to be attained. 1 Pa.C.S. § 1921(c)(3), (4).

Nothing in *Schmidt* altered these bedrock principles of statutory construction. Rather, in *Schmidt* we recognized that we had viewed Section 306(f.1)(1) as "the defining provision of employers' and insurer's responsibilities regarding payment of medical expenses" that "are reasonable and necessary to a claimant's work-related injury." *Schmidt*, 333 A.3d at 319. That recognition of our prior interpretation of Section 306(f.1)(1), however, did not require us to disregard the plain language of the Act in order to pursue its spirit. *See* 1 Pa.C.S. § 1921(b). Instead, in construing the statute, we gave

"effect to 'medicines and supplies' as provided in the statute as the broad-based encompassing phrase intended by the General Assembly, **evinced by the plain language thereof**." *Schmidt*, 333 A.3d at 319. (emphasis added). In other words, irrespective of our prior determinations of the General Assembly's intent in enacting Section 306(f.1)(1), our holding in *Schmidt* was supported by the plain language of the statute.

Similarly, notwithstanding our prior observations in *Eighty-Four Mining* regarding the General Assembly's intent in enacting the Anti-Referral Provision, we are required to look to the statute's plain language in interpreting the provision. We cannot ignore the statute's plain language in pursuit of its spirit. 1 Pa.C.S § 1921(b). The general intent of the General Assembly in enacting the Anti-Referral Provision may have been to "contain costs by preventing physicians from acting in their own self-interest." *Eighty-Four Mining*, 721 A.2d at 1067. Recognition of that general intent, however, does not alter the plain language the General Assembly used in the Act. Nor does it necessarily mean the General Assembly barred treating physicians from making self-referrals for every possible type of service. Justice McCaffery criticizes this conclusion, finding that the inclusion of "goods or services" "means just that – all possible goods and services." Dis. Op. at 6 (McCaffery, J.). As explained above, however, this conclusion requires us to ignore the General Assembly's inclusion of the eight enumerated services along with the Anti-Referral Provision's grammatical structure. Essentially, Justice McCaffery, along with the Insurer, would have us ignore the plain language the legislature employed in pursuit of the *Eighty-Three Mining* Court's judicial determination of the legislature's intent. That intent is best evinced by the Anti-Referral Provision's plain language that clearly limits the prohibition on self-referrals to referrals for the eight enumerated services, which do not include prescription drugs and professional pharmaceutical services.

Additionally, the Insurer's alternative interpretation of "goods or services" is so overly broad that it encompasses each and every one of the Anti-Referral Provision's specifically enumerated medical services. Not only would prescription drugs and pharmaceutical services fit within the Insurer's reading of "goods or services," but so would laboratory goods and services, physical therapy goods and services, rehabilitation goods and services, and the rest of the Anti-Referral Provision's enumerated medical services. Such an interpretation would render those enumerated services mere surplusage in contravention of our rules of statutory interpretation. See *Jackiw,* 329 A.3d at 1156 (stating "interpreting language as mere surplusage is disfavored."). If the General Assembly intended "goods or services" to be read as broadly as the Insurer or the dissents contend there would have been no need to list the enumerated medical services. Likewise, Justice Wecht concedes that pursuant to his interpretation, "the legislature did not need to include the first eight examples of prohibited self-referrals in the [Anti-Referral Provision]." Dis. Op. at 6 (Wecht, J.). Justice Wecht acknowledges it is "somewhat odd for the General Assembly to engage in surplusage" but that "oddity alone does not justify ignoring the [A[nti-[R]eferral provision's punctuation," and that the Statutory Construction Act states only that courts should give effect to all provisions of a statute "if possible." *Id.* at 7. As explained above, giving effect to all provisions of the Anti-Referral Provision is not only possible but is also supported by the text of the statute, including the inclusion of "or" between "infusion therapy" and "diagnostic imaging."[15] If the interpretations proposed by the Insurer and the respective dissents were correct the legislature would have simply

---

[15] Justice Wecht also criticizes us for not applying the last antecedent rule. Dis. Op. at 7 (Wecht, J.). Justice Wecht himself also recognizes that this rule "is not absolute and may 'be overcome by other indicia of meaning[.]" Dis. Op. at 7 (Wecht, J.) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). We believe the entirety of the content of the Anti-Referral Provision, as previously explained, clearly overcomes any application of the last antecedent rule.

stated "it is unlawful for a provider to refer a person for **any** goods or services." The legislature did not say that and instead listed eight enumerated categories of prohibited self-referrals. Our interpretation is the only one that gives meaning to the language the legislature actually used.

Other provisions of Section 306(f.1)(3) support our interpretation that self-referrals for prescription drugs and professional pharmaceutical services are not included in the Anti-Referral Provision's ban. Two paragraphs after the Anti-Referral Provision, the General Assembly enacted Section 306(f.1)(3)(vi), *see* 77 P.S. § 531(3)(vi), which specifically and exclusively addresses prescription drugs and pharmaceutical services in discussing reimbursement. We have previously stated that "where the legislature includes specific language in one section of the statute and excludes it from another the language should not be implied where excluded." *Fletcher*, 985 A.2d at 684. More so, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Shafer Elect. & Const. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014). Here, the legislature included specific language regarding the reimbursement for drugs and professional pharmaceutical services in Section 306(f.1)(3)(vi) but failed to include similar language in the Anti-Referral Provision prohibiting physician self-referrals for such services. The omission of language regarding prescription drugs and professional pharmaceutical services in the Anti-Referral Provision while including such language in the provision addressing reimbursement is significant to show the General Assembly did not intend to include prescription drugs and professional pharmaceutical services in the Anti-Referral Provision's self-referral prohibition. *See Fonner*, 724 A.2d at 907. We therefore decline to add such a self-referral prohibition through interpretation or implication where the General Assembly declined, for whatever reason, to include one in the statute's plain language.

The Insurer contends Section 306(f.1)(3)(vi) is of no relevance to our interpretation of the Anti-Referral Provision. It argues that in *Schmidt* we reiterated that Section 306(f.1)(1) was "the defining provision of employers' and insurers' responsibilities regarding payment of medical expenses for certain treatments and services – *i.e.*, those that are reasonable and necessary to a claimant's work-related injury." Appellee's Brief at 32-33 (quoting *Schmidt*, 333 A.3d at 319). Consequently, the Insurer contends, "it is logical that the legislature would draft subsequent provisions inclusively extending to prescription drugs and pharmaceutical services as both are required to meet the proper standard of care for treating work-related injuries" and "the fact that a subsequent provision speaks to procedures concerning prescription drugs and pharmaceutical services has no bearing on whether same are subject to the [A]nti-[R]eferral [P]rovision in light of the broad-encompassing phrase "goods or services[.]" *Id.* at 33.

We agree that the legislature's inclusion of a subsection in the WCA for the reimbursement of prescription drugs and pharmaceutical services does not automatically indicate the legislature did not also include those services in the Anti-Referral Provision. However, the fact remains that when the legislature wanted to specifically address prescription drugs and pharmaceutical services in the WCA it did so explicitly but failed to include that explicit language in the Anti-Referral Provision. As we stated above "where the legislature includes specific language in one section of the statute and excludes it from another the language should not be implied where excluded." *Fletcher*, 985 A.2d at 684. Under these circumstances, we find the General Assembly's decision to include prescription drugs and pharmaceutical services in Section 306(f.1)(3)(vi) but omit those services from the Anti-Referral Provision supports our conclusion that those services are not included in the Anti-Referral Provision's self-referral prohibition.

Having found the Anti-Referral Provision's plain language makes clear that the phrase "goods or services" is not an independent catchall provision, we do not consider the Department's regulations in ascertaining the legislature's intent. *See* 1 Pa.C.S. § 1921(c)(8) ("When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: Legislative and administrative interpretations of such statute."). That being the case, as the hearing officer relied on the Department's regulations in support of his determination, we observe that those regulations are consistent with our interpretation. According to the regulations, under the Anti-Referral Provision, "a provider may not refer a person for **certain** treatment and services if the provider has a financial interest with the person or in the entity that receives the referral." 34 Pa. Code § 127.301(a) (emphasis added). In accordance with our interpretation, the "certain" services are simply limited to the eight specific services enumerated in the Anti-Referral Provision.

Furthermore, and contrary to the hearing officer's reasoning, Section 301(c) of the regulations is also consistent with our interpretation. Section 301(c) states in relevant part "[r]eferrals permitted under all present and future Safe Harbor regulations promulgated under [the Medicare Act] …, and all present and future **exceptions** to the Stark amendments to the Medicare Act …, and all present and future regulations promulgated thereunder are not prohibited referrals involving financial interest …" 34 Pa. Code § 127.301(c) (emphasis added). The hearing officer accurately observed that "outpatient prescriptions currently find no safe harbor" and "are explicitly disallowed" under the Stark amendments. Hearing Officer Decision, Conclusions of Law, ¶ 4. The hearing officer was correct that, unlike the Anti-Referral Provision, the Stark amendments explicitly include outpatient prescription drugs as DHS for which providers are prohibited from making self-referrals, *see* 42 U.S.C. § 1395nn(h)(6), and that outpatient

prescriptions drugs are not included in any of the Stark amendments' exceptions or safe harbors. *See* 42 U.S.C. § 1395nn(b). While the regulations incorporate those exceptions and safe harbors, they do not purport to incorporate the Stark amendments' list of DHS that providers are prohibited from self-referring. Therefore, the fact that the Stark amendments prohibit self-referrals for outpatient prescription services is of no relevance in determining if the Department's regulations include such a prohibition. Of even more import is the fact that the text of the Anti-Referral Provision itself is completely bereft of any indication that the General Assembly intended to incorporate the Stark amendments' list of DHS. Moreover, as the plain language of the Anti-Referral Provision limits its prohibition on self-referrals to the enumerated services, any attempt by the Department to expand that prohibition to encompass additional services, including those listed in the Stark amendments, would be clearly erroneous and inconsistent with the statute, entitling it to little, if any, weight. *See Lancaster Cnty. v. Pa. Labor Relations Bd.*, 124 A.3d 1269, 1286 (Pa. 2015).

Contrary to Justice McCaffery's assertion in his dissent, our interpretation does not embolden medical providers to prescribe unnecessary or harmful medication for pecuniary gain or to commit any other nefarious actions. *See* Dis. Op. at 4 (McCaffery, J.). Our interpretation simply gives meaning to the plain language the General Assembly used in the Anti-Referral Provision. If our legislature, like the dissents, wishes to bring self-referrals for prescription drugs and pharmaceutical services, or any other type of service not enumerated in the Anti-Referral Provision, within the provision's self-referral prohibition, it is free to do so. Our interpretation merely recognizes it has so far failed to bar such referrals. For the foregoing reasons, we reverse the Commonwealth Court and remand the consolidated cases for further proceedings in accordance with this decision.

Chief Justice Todd and Justices Donohue, Dougherty and Brobson join the opinion.

Justice Wecht files a dissenting opinion.

Justice McCaffery files a dissenting opinion.